**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **JANE DOE,**<br><br>    Plaintiff<br><br>    v.<br><br>**DOUG GORMAN,** Warren County Judge/Executive, in his official capacity, only;<br><br>**STEPHEN HARMON, Chief Jailer at Warren County Regional Jail**, in his official capacity, only;<br><br>**BROOK LINDSEY HARP, Deputy Jailer at Warren County Regional Jail**, in her individual capacity, only;<br><br>**BENJAMIN CARROLL, Officer at Bowling Green Police Department,** in his individual capacity, only;<br><br>**OFFICER SMITH 1, Officer at Warren County Regional Jail,** in her individual capacity, only; and,<br><br>**OFFICER SMITH 2, Officer at Warren County Regional Jail,** in her individual capacity, only;<br><br>    Defendants. | **Case No.** 1:23-CV-161-GNS<br><br>**Hon.** |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AND FOR DAMAGES**

Plaintiff **JANE DOE**, by and through her attorneys, CAIR Legal Defense Fund ("CAIR"),

brings this Complaint for Declaratory and Injunctive Relief against Defendants **DOUG**

GORMAN, CHIEF JAILER STEPHEN HARMON, DEPUTY JAILER BROOK LINDSEY HARP, **OFFICER SMITH 1,** and **OFFICER SMITH 2** of Warren County Regional Jail in Bowling Green, Kentucky ("WCRJ") and **OFFICER BENJAMIN CARROLL** of the Bowling Green Police Department for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution and religious guarantees under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., the Constitution of the Commonwealth of Kentucky, and the Kentucky Religious Freedom Act, and pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and states as follows:

**Nature of this Action**

1.    The Free Exercise Clause of the United States Constitution has long guaranteed individuals the right to practice their religious beliefs without interference from the government. The Fourth Amendment further provides individuals the right to be free from unreasonable searches and seizures and excessive force. Such rights were enacted to safeguard our freedoms, specifically during interactions with law enforcement. These rights remain intact, even when facing arrest or incarceration.

2.    However, Defendants have disregarded these sacred constitutional protections. Together, Defendant Carroll, Defendant Gormon, and Defendant Harmon, by and through his agents and Defendants Harp, Officer Smith 1, and Officer Smith 2, deprived Jane Doe of her right to wear her religiously mandated hijab in a public space and forced her to take a booking photograph without her hijab on. This photograph remains publicly available on WCRJ's website.

3.    Defendants also subjected Jane Doe to an unnecessary full body strip search and filmed and projected it on a TV screen for all those present in the jail lobby (male and female) to see.

4.    Across the country, prisons, and jails, as well as other public and government funded spaces, take a variety of approaches to accommodating Muslims in their care. All incarcerees and their religious beliefs are entitled to basic respect and certainly privacy, particularly Muslim women whose modesty is not just a personal conviction but a religious obligation.

5.    Every moment this picture remains public perpetuates the harm and anguish suffered by Mrs. Doe. It is a permanent record and consistent reminder of Defendants' violation of her right to practice her faith.

6.    This action aims to have Warren County Regional Jail implement a policy change prohibiting it and its officers from taking booking photographs of Muslim women without their hijab, and to order Defendants to destroy the publicly available image of Mrs. Doe from their database and any security footage that captured her without her hijab during her time at their facility.  Further, this action seeks to enjoin Warren County Regional Jail and its officers from engaging in public, unnecessary strip searches of any individual.

### Jurisdiction and Venue

7.    This action arises under 42 U.S.C. § 1983, the laws and the Constitution of the United States, the Constitution of the Commonwealth of Kentucky, and the Kentucky Religious Freedom Restoration Act.

8.    This Court has original federal question jurisdiction over Mrs. Doe's claims of violations of the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc et seq., pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. § 1983.

9.    This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1343 over Mrs. Doe's claims regarding the deprivation under color of state law of rights secured by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

10.    This Court has jurisdiction over Mrs. Doe's constitutional claims pursuant to 42 U.S.C. § 1983.

11.    Mrs. Doe's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

12.    This Court has supplemental jurisdiction for violations of Kentucky law under 28 U.S.C. § 1367(a).

13.    This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the Commonwealth of Kentucky.

14.    At all relevant times, Warren County Regional Jail where the immediate events transpired, overseen by Defendant Harmon, is a federally funded "institution" as defined under the RLUIPA (42 U.S.C. § 2000cc-1(a)).

15.    Mrs. Doe's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983 and RLUIPA.

16.   Venue is proper under 42 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the Commonwealth of Kentucky, and the substantial part of the acts described herein occurred within this District.

## Parties

17.   Plaintiff Mrs. Jane Doe is a Muslim woman and longtime resident of the City of Bowling Green, Kentucky. She was and is at all relevant times an "individual" as the term is defined in 42 U.S.C. § 2000cc, et seq.

18.   Defendant Doug Gorman is the Warren County Judge/Executive, a county duly organized under and with all the powers specified and implied by the laws of the Commonwealth of Kentucky and carrying on governmental functions in Warren County.  He is the chief administrator of Warren County and executes its policies and budget.  At all relevant times, Defendant Gorman was a decision-maker and possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of WCRJ, including those individual officers of the WCRJ charged with operating and overseeing the search, seizure, detention and arrests at WCRJ. At all relevant times, Defendant Gorman was the employer of Defendants Carroll, Harmon, Harp, Smith 1, and Smith 2. Defendant Gorman's principal office is located at 429 East 10th Avenue, Suite 201, Bowling Green, Kentucky. Defendant Gorman is sued in his official capacity, only.

19.   Defendant Stephen Harmon is the Chief Jailer of Warren County Regional Jail (WCRJ), a municipal corporation, duly organized under and with all the powers specified and

implied by the laws of the Commonwealth of Kentucky and carrying on governmental functions in Warren County. Defendant Harmon is responsible for running Warren County Regional Jail, including the provision of "safe and well maintained… care and custody of those incarcerated."[1] At all relevant times, Defendant Harmon was a decision-maker and possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of WCRJ, including those individual officers of the WCRJ charged with operating and overseeing the search, seizure, detention and arrests at WCRJ. At all relevant times, Defendant Harmon was the employer and supervisor of Defendants Harp, Officer Smith 1, and Officer Smith 2.  Defendant Harmon's principal office is located at 920 Kentucky Street Bowling Green, KY 42101, where Defendant, by and through his agents, processes Warren County custodial bookings. Defendant Harmon is sued in his official capacity, only.

20.   Defendant Brook Harp is an individual employed as a deputy jailer at WCRJ, and was at all relevant times responsible for the custody, safety, security, and supervision of incarcerees in a prison or any other correctional facility.[2]  At all relevant times, she was charged with protecting the Constitutional rights of incarcerees in her custody and control and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of WCRJ in addition to local, state, and federal laws.  She is, upon information and belief, a supervisor of Officers Smith 1 and

---

[1] *See* Warren County Jailer available at  http://www.warrencountyky.gov/jailer (last accessed 9.15.23), WCRJ Job Descriptions at https://www.warrencountyjail.com/WCRJ_Job_Description.pdf (last accessed 9.15.23)
[2] *See* WCRJ Job Descriptions at https://www.warrencountyjail.com/WCRJ_Job_Description.pdf

Smith 2. Defendant Harp personally engaged in discriminatory behavior against Mrs. Doe and deprived her of her rights while she was in her custody and control.  She is upon information and belief a resident of this judicial district.  She is being sued in her individual capacity, only.

21.    Defendant Benjamin Carroll is an individual employed as a police officer at Bowling Green Police Department, and was at all relevant times responsible for the custody, safety, security, and supervision of incarcerees in a prison or any other correctional facility.[3]  At all relevant times, he was charged with protecting the Constitutional rights of arrestees in his custody and control and assuring that his actions comply with applicable policies, rules, regulations, customs, practices, and procedures of the Bowling Green Police Department and WCRJ in addition to local, state, and federal laws.  Defendant Carroll personally engaged in discriminatory behavior against Mrs. Doe and deprived her of her rights while she was in his custody and control.  He is upon information and belief a resident of this judicial district.  He is being sued in his individual capacity, only.

22.    Defendant Officer Smith 1 is an officer employed by WCRJ.  At all relevant times, she was charged with protecting the Constitutional rights of incarcerees in her custody and control and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of WCRJ in addition to local, state, and federal laws. Defendant Officer Smith 1 personally engaged in discriminatory behavior against Mrs. Doe and deprived her of her rights while she was in her custody

---

[3] *See* WCRJ Job Descriptions at https://www.warrencountyjail.com/WCRJ_Job_Description.pdf

and control.  She is upon information and belief a resident of this judicial district.  She is being sued in her individual capacity, only.

23.  Defendant Officer Smith 2 is an officer employed by WCRJ.  At all relevant times, she was charged with protecting the Constitutional rights of incarcerees in her custody and control and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of WCRJ in addition to local, state, and federal laws. Defendant Officer Smith 2 personally engaged in discriminatory behavior against Mrs. Doe and deprived her of her rights while she was in her custody and control.  She is upon information and belief a resident of this judicial district.  She is being sued in her individual capacity, only.

## **Factual Background**

24.  Jane Doe is a Muslim woman and has been a resident of the Commonwealth of Kentucky since 2001. A refugee from Bosnia, she built a life for herself as a United States citizen and is now married, a mother of two, and working as a medical assistant in the City of Bowling Green.

25.  Mrs. Doe has been a Muslim her entire life. She wears the hijab, a headscarf worn by Muslim women that covers their hair and neck. Mrs. Doe has been wearing the hijab since July of 2013.

26.  Mrs. Doe's Kentucky driver's license and passport depict her wearing the hijab, which covers her hair, ears, and neck.

27.  Mrs. Doe's faith requires her to wear a hijab at all times when she is in mixed-gender spaces outside of her immediate family. Mrs. Doe's religious beliefs are deeply rooted

in Islamic texts and teachings. Her hijab is a pillar of her religious practice and integral to her identity as a Muslim woman.

28.    Appearing in public without hijab or being photographed without wearing hijab and having that photo available to the public is a serious breach of Mrs. Doe's faith and a deeply humiliating and defiling experience in conflict with her sincerely held religious beliefs.

29.    Mrs. Doe also wears the abaya, a long-sleeved, full-length dress. She believes that in addition to covering her hair, she is required to wear loose-fitting clothing that fully covers her arms and legs. Mrs. Doe must fully cover in front of males who are not members of her immediate family. Anytime Mrs. Doe goes out in public, whether shopping or at work, she is clothed in her abaya.

30.    Appearing in public without her abaya or without loose-fitting clothing that covers her arms and legs is a serious breach of Mrs. Doe's faith and a deeply humiliating and defiling experience in conflict with her sincerely-held religious beliefs.

31.    On April 6, 2023, at approximately 4:30 PM, officers from the Bowling Green Police Department responded to a call at Mrs. Doe's place of residence, including Defendant Officer Benjamin Carroll. The officers questioned Mrs. Doe outside her home. Mrs. Doe was wearing an abaya and hijab at the time. The female officer present handcuffed her and placed her in their vehicle.

32.    While in the vehicle on the way to Warren County Regional Jail, Mrs. Doe told Officer Carroll that she was required to keep her hijab on in accordance with her religious beliefs.  Because she was concerned that jail attire may conflict with her religious

attire, she asked Officer Carroll about jail attire regulations. But Officer Carroll did not respond to her.

33.    Mrs. Doe was visibly Muslim when she was arrested and brought to the jail because she was wearing her hijab and abaya.

34.    On arrival at WCRJ, Mrs. Doe went through the booking process. Defendant Deputy Jailer Harp was involved in the booking process.

35.    Officer Harp—recognizing that Mrs. Doe is Muslim—asked her if she would be signing up for an iftar tray (the incident occurred during Ramadan[4]). Mrs. Doe, having never been arrested before, was confused by the question and asked for clarification.

36.    Officer Harp became visibly annoyed and responded with an irritated tone, stating that iftar was served to Muslim incarcerees at sunset so Mrs. Doe would have to sign up if she wanted to eat.

37.    Mrs. Doe agreed to sign up for an iftar tray.

38.    Shortly after processing, Defendant Officer Smith 1 arrived to conduct an initial search of Mrs. Doe. Defendant Officer Smith 1 is a white woman with red hair.

39.    Officer Smith 1 conducted a pat-down search with all of Mrs. Doe's clothes still on. She then questioned Mrs. Doe and, finally, removed her handcuffs.

40.    Officer Smith 1 then informed Mrs. Doe that she would have to conduct a more thorough search of her person which would involve removing her clothes. She explained to Mrs. Doe that the strip search would occur in a private room and the jail would provide her with a uniform to put on afterward.

---

[4] Ramadan is a holy month where Muslims fast every day from sunrise to sunset. The meal at sunset is referred to as "iftar."

41.    Believing this was standard procedure, and with the understanding that it would be done in a private room with only one female officer present, Mrs. Doe did not argue and agreed to the search.

42.    WCRJ's Policy and Procedure Manual presently provides under General Policy 01.07 (H)(a) the following rules regarding strip searches:

> A.    *"Strip searches will only be conducted with the express authorization of the Sheriff and supported by a court order issued by a Judge. Strip searches shall be performed by persons of the same sex as the person arrested at the Warren County Detention Center in an area where persons not physically conducting the search cannot observe the search. A minimum of two persons must also be present during the entire search."*
>
> B.    *When authorized, the strip search will be conducted by the least number of same-sex personnel present as necessary, in conformance with approved hygienic practices, and under circumstances that provide privacy for all but those authorized to conduct the search.*
>
> C.    *All strip searches will be documented in an incident report and routed to the Sheriff in the customary manner.*

43.    Officer Smith 1 escorted Plaintiff to a room without windows which Mrs. Doe perceived to be private. Officer Smith 1 stated that the strip search was standard procedure and all incarcerees are subjected to the same search. Officer Smith 1 shut the door behind them and instructed Mrs. Doe to remove all her garments for a strip search. Once nude, Officer Smith 1 instructed Mrs. Doe to bend over and cough three times.

44.    Following the strip search, Officer Smith 1 gave Mrs. Doe back her hijab as well as a uniform with short sleeves.

45.    Mrs. Doe immediately requested a long-sleeved shirt instead. Initially, Officer Smith 1 refused, but Mrs. Doe explained it was a religious requirement for her to be fully covered.

46.    Finally, Officer Smith 1 complied, and Officer Smith 2 brought in a thermal long-sleeved shirt for Mrs. Doe to wear instead.  Officers Smith 1 and Smith 2 explained to Mrs. Doe that it was against policy for her to be granted a long-sleeved shirt, but they would not apply the policy to her.  Mrs. Doe changed into jail-issued clothing and put on her hijab.

47.    Mrs. Doe was then escorted out of the room by Officer Smith 1 and taken into the hallway of the lobby. There she was instructed to sit on a metal bench in the jail lobby.

48.    As she sat, Mrs. Doe immediately noticed that there was a television screen hung right above the door where she had been strip searched. The television was facing the lobby. It was approximately 32 inches, big enough for all those in the lobby and hallway, which was full of male and female officers and incarcerees, to see.

49.    To Mrs. Doe's horror, the television screen was streaming live video surveillance footage from inside the room where Mrs. Doe was strip searched.

50.    Upon information and belief, Defendant Harp was in the lobby at the time Mrs. Doe was being strip searched and could see the live television feed.

51.    Mrs. Doe felt mortified, degraded, violated, and humiliated.  She panicked as she realized that everyone in the hallway and lobby saw her fully nude and being strip searched, which is considered a severe violation of her sincerely-held religious beliefs that require her to wear clothes that cover her body in front of strange men and women.

52.   Officer Smith 1's decision to subject Mrs. Doe to a strip search knowing it would be streamed live in full view of male officers, officials, and other detainees inflicted a trauma and degrading indignity she will remember for the rest of her life.

53.   At no time did Officer Smith 1 obtain a court order authorizing a strip search of Mrs. Doe from a judge before conducting the strip search of Mrs. Doe.

54.   At no time did Officer Smith 1 ensure that the strip search was conducted with at least one other personnel of the same sex.

55.   At no time did Officer Smith 1 take measures to provide any privacy during the strip search and ensure the search cannot be observed by persons not conducting the search.

56.   Upon information and belief, Officer Smith 1 conducted the strip search in a room knowing full well it had a security camera feed that played a live feed on a monitor just outside the door of the room, in full view of strange persons in the lobby and hallway.

57.   Upon information and belief, at no time did Defendant Harp or any of the officers or officials that were in the lobby and hallway viewing the live feed of Mrs. Doe's strip search stop the strip search, ensure that at least one other personnel of the same sex was present during the strip search, ensure that persons not involved in the strip search could not observe strip search, turn off the live video feed to ensure privacy during the strip search, or take any measures to provide any privacy for Mrs. Doe whatsoever.

58.   Upon information and belief, Defendants acted in concert with one another to violate Ms. Doe's sincerely held religious beliefs by conducting a strip search in full view of

13

strange persons, including men, in the lobby and hallway in accordance with WCRJ custom and practice.

59. While Mrs. Doe sat on the bench in the hallway, processing the implications of this traumatic experience, Officer Smith 1 informed Mrs. Doe that she would not be allowed to wear her hijab throughout the facility and asked her to remove it.

60. Mrs. Doe protested and explained that wearing the hijab was both a religious requirement and her constitutional right. She continued to explain to Officer Smith 1 that the hijab was essential to her beliefs, and she could not be in public without it.

61. Officer Smith 1 still insisted that Mrs. Doe remove her hijab.

62. At some point in the conversation Mrs. Doe became visibly upset and began to cry.

63. In response to Mrs. Doe's emotional reaction, Officer Smith 1 briefly left and returned with Officer Smith 2, to try to calm down Mrs. Doe.   Officer Smith 2 is a black female officer.

64. Officer Smith 2 told Mrs. Doe that it was required procedure to remove her hijab, and that even Christians and Jews are required to remove head coverings.

65. Mrs. Doe continued to protest and plead, still visibly crying. She repeated her pleas that wearing the hijab was her religious right, but to no avail.

66. Toward the end of the conversation, Defendant Harp intervened and told Mrs. Doe that the removal of her hijab was policy, and that no exception would be made for her.

67. While still seated on the bench, Mrs. Doe reluctantly removed her hijab in full view of the surrounding male officers and incarcerees present.

68.  Still exposed without her hijab, Mrs. Doe was escorted to the jail lobby, which was still full of male and female officers and incarcerees, to have her booking photograph taken, where Defendant Officer Carroll was still present.

69.  As Officer Smith 1 was positioning Mrs. Doe for the booking photograph, Mrs. Doe plead with Officer Smith 1 to allow her to put her hijab back on.

70.  However, Defendant Smith 1 told her that the policy prohibits her from wearing a hijab for booking photographs. Officer Carroll, having been informed by Mrs. Doe earlier in the night of her religious accommodations, did nothing to intervene or protect her religious rights, despite still being an on-duty officer charged with her care. He stood by, in the same lobby as her hijab-less photo was taken, and along with the other male officers and incarcerees, and visitors present, was able to see her take the photo.

71.  Defendant Smith 1 took Mrs. Doe's photograph without her hijab despite Mrs. Doe's protests.

72.  Defendants, in accordance with WCRJ's policies and practices, uploaded Mrs. Doe's hijab-less photo to the public JailTracker database.

73.  JailTracker is a specialized software solutions company that serves corrections facilities across the country. WCRJ utilizes a searchable incarcerees database from JailTracker that is available to the public through their website at https://www.warrencountyjail.com.

74.  Mrs. Doe's image without her hijab is still available to law enforcement agencies as well as any member of the public who simply searches her name in the database.

75.   By photographing Mrs. Doe without her hijab or abaya and uploading that photograph to a public database, Defendants have memorialized in a permanent way the violation of Mrs. Doe's religious rights in a manner that continuously perpetuates the violations that occurred that night.

76.   Mrs. Doe was then escorted to her cell without her hijab and, once inside, was permitted to put her hijab on again inside the cell, though she was not given her abaya back. She remained in the jail-issued clothing.

77.   Sometime later, Mrs. Doe's husband arrived to pay her bond and facilitate her release with Officer Smith 1 and another male officer who processed the payment. Defendant Harp escorted Mrs. Doe from the cell to the lobby.

78.   Mrs. Doe was released from the facility on April 6th, 2023, at approximately 10 PM EST, four hours following her arrival at WCRJ. In those four hours, she was publicly strip searched and deprived of her hijab in a mixed-gender space.

79.   Upon information and belief, Defendants and their employees and agents, forced Mrs. Doe to remove her religious head covering pursuant to a custom, practice, or official policy that permits WCRJ officers and officials to strip the religious coverings of detainees for booking photographs and during detention.

80.   Upon information and belief, Defendants and their employees and agents, subjected Mrs. Doe to strip search that was streamed live on a monitor that could be viewed by strange men in the lobby and hallway pursuant to a custom, practice, or official policy that permits WCRJ officers and officials to do so.

81.   WCRJ does not have a policy that sets forth the circumstances in which detainees are permitted to wear items to cover themselves for religious purposes.  The lack of

written policies to protect detainees' religious freedom to wear religious coverings during booking photos and during detention are in and of themselves policies and/or customs, which permit WCRJ officers to remove and violate religious rights to not to remove religious coverings with impunity.

82. Defendants caused the forcible removal of Mrs. Doe's hijab without her consent pursuant to a custom, practice, or official policy promulgated and implemented by WCRJ and Defendants, which was ratified by WCRJ or which WCRJ failed to address.

83. Defendants caused the strip search to be conducted in public view of strange men without her consent pursuant to a custom, practice, or official policy promulgated and implemented by WCRJ and Defendants, which was ratified by WCRJ or which WCRJ failed to address.

84. WCRJ has no written policy forbidding its employees from removing detainees' religious head coverings or describing scenarios when detainees would be permitted to wear religious headwear or other clothing.

85. Upon information and belief, WCRJ has not provided training to its officials and officers to prohibit them from conducting strip searches in public view of strange men, and WCRJ officials and officers have filled this vacuum of a lack of training with a custom and practice of conducting strip searches in public view of strange men in violation of their religious beliefs and constitutionally held rights.

86. In contrast to the WCRJ policy, custom, or practice of forcibly removing religious head coverings for booking photographs, the United States Department of State permits individuals to maintain their religious head coverings in official passport photographs. According to the Department of State website, this accommodation

should be granted to individuals who "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn in public."[5]

87.    In contrast to the WCRJ policy, custom, or practice of forcibly removing religious head coverings during detention, the Federal Bureau of Prisons ("BOP") has enacted a policy accommodating "religious headwear" providing that "[s]carves and head-wraps (hijabs) are appropriate for female inmates."[6]

88.    In contrast to the WCRJ policy, custom, or practice of forcibly removing religious head coverings during detention, the Kentucky Department of Corrections permits "[s]carves and head wraps to be authorized for female inmates who have identified a religious preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition."  This includes the hijab in the colors of white or off white to maintain uniformity.[7]

89.    In contrast to the WCRJ policy, custom, or practice of forcibly removing religious head coverings during detention, the New York Department of Corrections permits incarcerees to wear religious head coverings.[8]

90.    In contrast to the WCRJ policy, custom, or practice of forcibly removing religious head coverings during detention, the Orange County Sheriff's Department in California, as of 2013, does not require Muslim women in custody to remove their hijabs in front of

---

[5] https://ru.usembassy.gov/u-s-citizen-services/passports/photos

[6] *See* U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004), *available at:*  http://www.bop.gov/policy/progstat/5360_009.pdf.

[7] *See* Kentucky Corrections, Policies and Procedures, Policy No. 2301 at 5 (filed Jan. 9, 2007).

[8] *See* State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015).

male officers, and provides temporary headscarves. This occurred following a suit by a Muslim woman detained in North County Justice Center for several hours after being forced to remove her hijab.[9]

91.    These examples show a growing national consensus that there is no basis to require the removal of religious head coverings while in detention or custody. Additionally, other correctional facilities and government agencies have recognized the sanctity of the hijab when it is worn as a religious article of clothing, which should be properly accommodated.

92.    By forcibly removing Mrs. Doe's hijab and exposing her to strange men without her consent and without a valid security concern, by photographing her without her hijab and without her consent, and by subjecting her to a strip search and exposing her fully nude to strange men, Defendants caused Mrs. Doe extreme mental anguish, trauma, and emotional distress.

93.    Defendants subjected Mrs. Doe to an unreasonable search and seizure, although she was not armed or dangerous and although she was not engaging in criminal activity.

94.    Upon information and belief, the official capacity Defendants were aware or should have been aware that Defendants Gorman, Harmon, Harp and Officer Smith 2 engaged in the practice of removing religious head coverings for booking photographs, like the hijab, and that such removal and deprivation would violate Mrs. Doe's rights under federal and state law.

95.    The official capacity Defendants failed to prevent Defendants Gorman, Harmon, Harp and Officer Smith 2 from depriving Mrs. Doe of her hijab either by training these

---

[9] http://www.ocregister.com/articles/religious-495992=county-court.html

officers, exercising their control over those officers, adequately supervising those officers, or redressing those officer's conduct.

96.    Defendants knew or should have known their actions were unlawful and in violation of clearly established law prohibiting Defendants from imposing a substantial burden on Mrs. Doe's free exercise of religion absent a compelling government interest.

97.    Defendants knew or should have known that their unreasonable search and seizure of Mrs. Doe of her right to be secure in her person and effects against unreasonable searches and seizures.

98.    By failing to properly train, control, and supervise its officers, and by failing to implement a policy safeguarding the religious rights of detainees and arrestees, Defendants demonstrated a reckless indifference to Mrs. Doe's constitutional rights.

99.    On April 6, 2023, the day on which Mrs. Doe was arrested and detained, Defendants Gorman and Harmon managed and supervised the WCRJ officers, including Defendants Harp, Smith 1, and Smith 2 who had contact with Mrs. Doe and participated in the events that form the basis of this Complaint.

## COUNT I

**Public Broadcast of Strip Search**
**Violation of the Fourth and Fourteenth Amendments**
**to the United States Constitution**
**42 U.S.C. § 1983**

**(Against Official Capacity Defendants and Officer Smith 1)**

100.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein.

101.  At all relevant times, Mrs. Doe was in the custody and control of the Defendants while she was detained by Defendants.

102.  At all relevant times, Defendants were "state actors" under 42 U.S.C. §1983 and acting under color of state law.

103.  At all relevant times, Mrs. Doe was under the direct supervision and control of Defendants.

104.  The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Courts have repeatedly emphasized the sanctity of every individual's right "to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." U.S. Const. amend. IV. The Fourth Amendment applies to the Commonwealth of Kentucky through the 14th Amendment.  U.S. Const. amend. XIV, § 1.

105.  42 U.S.C. §1983 provides a vehicle for a private cause of action against state actors who engage in activities that violate an individual's rights guaranteed by the United States Constitution or an amendment to the Constitution.

106.  Defendants' strip search of Mrs. Doe was unreasonable and conducted without probable cause; and, Defendants do not have significant and legitimate security interests that outweigh Mrs. Doe's privacy rights.  See *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

107.  Defendants violated clearly established law, performing a search that was both excessive and unreasonable, when they broadcasted a strip search of Mrs. Doe without taking any measures to protect Mrs. Doe's privacy, in full view of strangers.

108. As a direct and proximate result of the Defendants' acts, omissions, customs, practices, policies, and decisions, Mrs. Doe was deprived of her rights under the Fourth Amendment to be secure in her person against unreasonable searches and seizures. Defendants humiliated Plaintiff, inflicting a degrading indignity she will remember for the rest of her life and causing injury as alleged above, entitling her to recover compensatory and punitive damages.

109. The official capacity Defendants maintained or tolerated unconstitutional customs, practices, and policies that facilitated the deprivation of Mrs. Doe's rights under the Fourth Amendment, as alleged above.

110. With deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional rights of Mrs. Doe, the official capacity Defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applies, among others, the following policies, practices, and customs: (a) failing to adequately train, supervise, and control officers in properly permitting detainees to maintain religious practices, including the hijab; (b) failing to establish policies and procedures to permit detainees to maintain religious practices, including the hijab; (c) failing to adequately train, supervise, and control officer in the proper manner to remove religious head coverings worn by detainees; (d) failing to establish policies and procedures to protect detainees from being stripped of their religious rights; and, (e) failing to adequately train, supervise, and control officers from properly preventing male officers and individuals from viewing detainees who are not wearing the hijab or who are nude and being strip searched, in violation of sincerely held religious beliefs.

111.    The policies, customs, and practices described above are evidenced by the treatment of Mrs. Doe by WCRJ officers, namely that, the official capacity Defendants' agents: (a) forcibly removed Mrs. Doe's obligatory religious headscarf without her consent and despite her notifying them of its religious significance; (b) forced Mrs. Doe to appear in front of men who were not immediately related or married to her without her hijab; (c) denied Mrs. Doe's request to replace her hijab despite notifying them of its religious significance; (d) photographed Mrs. Doe without her hijab; (e) uploaded the photograph of Mrs. Doe without her hijab into a database and disseminated it to the general public; and, (f) strip searched Mrs. Doe in full view of strange persons, including men, in the lobby and hallway.  These actions are evidence of the official capacity Defendants' systemic failure to comply with their constitutional obligations.

112.    The official capacity Defendants had either actual or constructive knowledge of the deficient policies, practices, and customs alleged above.  They acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, customs, or omissions thereof with respect to the constitutional rights of Mrs. Doe and other female detainees similarly situated.

113.    The individual capacity Defendants (a) forcibly removed Mrs. Doe's obligatory religious headscarf without her consent and despite her notifying them of its religious significance; (b) forced Mrs. Doe to appear in front of men who were not immediately related or married to her without her hijab; (c) denied Mrs. Doe's request to replace her hijab despite notifying them of its religious significance; (d) photographed Mrs. Doe without her hijab; (e) uploaded the photograph of Mrs. Doe without her hijab into a database and disseminated it to the general public; and, (f) strip searched Mrs. Doe

in full view of strange persons, including men, in the lobby and hallway. These actions are evidence of individual capacity Defendant's disregard for their constitutional obligations toward Mrs. Doe. They acted with deliberate indifference to the foreseeable effects and consequences of their actions in line with the policies, customs, or practices of official capacity Defendants.

114.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the Defendants, Mrs. Doe was injured and sustained damages as alleged above. Defendants' actions humiliated Mrs. Doe and inflicted a degrading indignity she will remember for the rest of her life.

115.    Defendants acted under color of state law and are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment rights.

116.    Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive and declaratory relief in the form requested in the Prayer for Relief below; and further grant nominal, compensatory, and punitive damages in addition to costs and attorneys' fees wrongfully incurred to bring this action and all such other relief this Honorable Court deems just and equitable.

### Count II

**Religious Exercise**
**Violation of the Religious Land Use and Institutionalized Persons Act**
**42 U.S.C. § 2000cc**

**(Against Official Capacity Defendants)**

24

117.    Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

118.    Defendants imposed a substantial burden on Plaintiff's religious exercise.

119.    Defendants' decision to remove Plaintiff's hijab throughout the facility, to strip search her on a livestream available for view by strangers, and to take and publicly publish her hijab-less booking photograph impedes her right to free exercise of religion.

120.    RLUIPA provides, in relevant part, that: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

121.    At all relevant times, Plaintiff was confined to an institution when the events transpired.

122.    Plaintiff's wearing of a hijab and abaya is a sincerely-held religious belief and religious exercise.

123.    Official capacity Defendant's acts or omissions, policies, and customs, while Plaintiff was confined by Defendant Harmon substantially burdened her religious exercise of wearing hijab in mixed gendered spaces.

124.    Official capacity Defendants' acts or omissions, policies, and customs, do not further a compelling government interest in identifying arrestees.  A photograph of a person's

face is sufficient for identification for other law enforcement and government agencies. In fact, the United States Department of State allows persons to wear religious head coverings in their passport photos so long as their faces remain visible.

125. Other police departments—including the New York Police Department (NYPD)—allow Muslim women to wear their hijab while being photographed without security or identification issues.[10]

126. Defendants' acts or omissions, policies, and customs, are not the least restrictive means of furthering a compelling government interest. Defendants could have, but did not, photograph Mrs. Doe with her hijab for the purposes of the publicly accessible online database. Defendants could have, but did not, allowed Mrs. Doe to wear her hijab throughout mixed-gendered spaces in the facility.

127. As a direct and proximate result of official capacity Defendants' wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive and declaratory relief in the form requested in the Prayer for Relief below; and further grant nominal, compensatory, and punitive damages in addition to costs and attorneys' fees wrongfully incurred to bring this action and all such other relief this Honorable Court deems just and equitable.

---

[10] See State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015); *See also* https://www.nytimes.com/2020/11/09/nyregion/hijab-muslim-nypd-mugshot-scarves.html

## COUNT III

**Free Exercise of Religion**
**Violation of the First and Fourteenth Amendments**
**to the United States Constitution**
**42 U.S.C. § 1983**

**(All Defendants)**

128.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein.

129.    42 U.S.C. § 1983 provides: Civil action for deprivation of rights: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

130.    Under the First Amendment, Plaintiff has the right to freely exercise her religion.

131.    42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage, to deprive a citizen of rights secured by the United States Constitution.

132.    Defendants, at all relevant times herein, were acting under color of state law.

133.    Defendants deprived Plaintiff of her right to freely exercise her religion by depriving her of her hijab and abaya while she was in Defendants' custody. Defendants stripped

Mrs. Doe of her hijab and photographed her, even though photographing her without a hijab did not further Defendants' interests in creating records by which Plaintiff could later be identified.

134.    As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment in favor of Plaintiff, and against Defendants, for damages in whatever amount Plaintiff is found to be entitled; preliminary injunctive relief followed by a permanent injunction; declaratory judgment; costs and attorneys' fees wrongfully incurred to bring this action; and any other damages, including punitive damages as provided by applicable law.

## COUNT IV

### Religious Freedom
### Violation of the Constitution of the Commonwealth of Kentucky
### Section 5

### (All Defendants)

135.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein.

136.    Defendants substantially interfered with Plaintiff's religious exercise.

137.    Defendants' decision to remove Plaintiff's hijab throughout the facility, to strip search her on a livestream available for view by strangers, and to take and publicly publish her hijab-less booking photograph robbed her of her right to free exercise of religion.

138.    The Constitution of the Commonwealth of Kentucky states in relevant part that "the civil rights, privileges or capacities of no person shall be taken away, or in anywise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience."

139.    Defendant's acts or omissions, policies, and customs, while Plaintiff was confined by Defendant Harmon substantially impeded her religious exercise of wearing hijab in mixed gendered spaces.

140.    Defendants' acts or omissions, policies, and customs, do not further a compelling government interest in identifying arrestees. As aforementioned, a photograph of a person's face is sufficient for identification for other law enforcement and government agencies.

141.    Defendants' acts or omissions, policies, and customs, are not the least restrictive means of furthering a compelling government interest. Defendants could have, but did not, photograph Mrs. Doe with her hijab for the purposes of the publicly accessible online database. Defendants could have, but did not, allowed Mrs. Doe to wear her hijab throughout mixed-gendered spaces in the facility.

142.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive and declaratory relief in the form requested in the Prayer for Relief below; and further grant nominal, compensatory, and punitive damages in addition to costs and attorneys' fees

wrongfully incurred to bring this action and all such other relief this Honorable Court deems just and equitable.

## COUNT V

**Religious Freedom**
**Violation of the Kentucky Religious Freedom Act**
**KY. REV. STAT. ANN. § 446.350 (West Supp. 2013)**

**(All Defendants)**

143.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein.

144.    Defendants substantially interfered with Plaintiff's religious exercise.

145.    Defendants' decision to remove Plaintiff's hijab throughout the facility, to strip search her on a livestream available for view by strangers, and to take and publicly publish her hijab-less booking photograph robbed her of her right to free exercise of religion.

146.    The Kentucky Religious Freedom Act provides in relevant part that "Government shall not substantially burden a person's freedom of religion. The right to act or refuse to act in a manner motivated by a sincerely held religious belief may not be substantially burdened unless the government proves by clear and convincing evidence that it has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest."

147.    Defendant's acts or omissions, policies, and customs, while Plaintiff was confined by Defendant Harmon substantially burdened her religious exercise of wearing hijab in mixed gendered spaces.

148.    There is no compelling governmental interest in infringing upon these religious exercises through Defendants' acts or omissions, policies, and customs.    As

aforementioned, a photograph of a person's face is sufficient for identification for other law enforcement and government agencies.

149.    Defendants' acts or omissions, policies, and customs, are not the least restrictive means of furthering a compelling government interest. Defendants could have, but did not, photograph Mrs. Doe with her hijab for the purposes of the publicly accessible online database. Defendants could have, but did not, allowed Mrs. Doe to wear her hijab throughout mixed-gendered spaces in the facility.

150.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive and declaratory relief in the form requested in the Prayer for Relief below; and further grant nominal, compensatory, and punitive damages in addition to costs and attorneys' fees wrongfully incurred to bring this action and all such other relief this Honorable Court deems just and equitable.

### Prayer for Relief

151.    WHEREFORE, Plaintiff requests that this Honorable Court enter judgement in favor of Plaintiff and against Defendants, on each and every count in this Complaint, and enter an Order awarding the following relief:

      a.  An injunction ordering Warren County Regional Jail implement a policy change prohibiting Defendants from taking booking photographs of Muslim women without their hijab;

31

b.  An injunction ordering Defendants to destroy Plaintiff's booking photographs taken with her hijab, as well as any and all security footage of Plaintiff without her hijab;

c.  An injunction ordering Defendants to take every step, including, but not limited to, instructing other persons or agencies given access to Plaintiff's booking photographs, including JailTracker, to destroy all copies of Plaintiff's booking photographs and associated security footage;

d.  Judgment in Plaintiff's favor on all causes of action alleged herein;

e.  An award of compensatory and punitive damages under 42 U.S.C. § 1983 and RLUIPA;

f.  An award of attorneys' fees, costs and expenses predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983 and RLUIPA.

g.  Any further relief to which Plaintiff is entitled or that this Honorable Court deems just and proper.

## **Jury Demand**

NOW COMES Plaintiff, by and through her undersigned counsel, and hereby demands

a trial by jury of the above-referenced causes of action.

Respectfully submitted,

CAIR NATIONAL LEGAL DEFENSE FUND

/s/Lena F. Masri
Lena F. Masri (VA 93291)*
lfmasri@cair.com
Kimberly Noe-Lehenbauer (OK 34744)*
knoelehenbauer@cair.com
Zanah Ghalawanji (MI P83116)*
zghalawanji@cair.com

453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

*Co- Counsel for Plaintiff*

/s/Roula Allouch
BRICKER GRAYDON LLP
Roula Allouch (Kentucky Bar No. 91594)
rallouch@brickergraydon.com

312 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 629-2805

*Co- Counsel for Plaintiff*

*Pro hac vice applications are forthcoming.

## VERIFICATION

I, ███████████ read the forgoing complaint, and hereby swear and affirm that the

information above is true and accurate to the best of my knowledge and recollection.

█████████████████████████████

Name: ████████████                    10/31/23

                                       Date