## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **JANE DOE,** <br><br> Plaintiff <br><br> v. <br><br> **DOUG GORMAN,** Warren County Judge/Executive, in his official capacity, only, et al. <br>        Defendants. | Case No.   1:23-CV-161-GNS <br><br><br> Hon. |

## BRIEF IN SUPPORT OF PLAINTIFF'S DOE MOTION FOR A PROTECTIVE ORDER AND TO KEEP THE NAME OF JANE DOE PLAINTIFF UNDER SEAL

At one time in this country, there was no freedom valued more than the freedom of religion. And yet the named plaintiff here, who seeks to proceed anonymously, has had her faith disregarded and marginalized. She has been denied her fundamental right to practice her religion. This action entails deep violations of her privacy, including a strip search of her person broadcast on a live security feed to a crowded public lobby in, as well as the public posting of a photograph of the named plaintiff without her religiously mandated hijab through the Warren County Regional Jail's website and JailTracker database.

Plaintiff fears that if she were named in this lawsuit, her privacy would be further compromised. She  fears that the nature of the strip search allegations would bring harm and shame to her family due to their cultural/ religious traditions. Further, she is concerned that her name on public record would draw more attention than necessary to the easily accessible hijab-less photograph, resulting in more people viewing it in violation of her sincerely held religious beliefs. The risk of harm to plaintiff is substantial, posing a risk to

her mental well-being, and reputation throughout her community. To name Plaintiff would all but guarantee that the harm already inflicted on her by Defendants would compound. On the other hand, the interest of Defendants in publicizing the name of the Doe Plaintiff is slight. The Defendants will still have full access to Mrs. Doe's name and information.

The Plaintiff is entitled to a protective order to prohibit court personnel from divulging her identity and allowing them to file documents identifying her under seal.

### **Factual Background**

Jane Doe is a Muslim woman. She has been a resident of the Commonwealth of Kentucky since 2001. A refugee from Bosnia, she built a life for herself as a United States citizen. She is now married, a mother of two, and working as a medical assistant in the City of Bowling Green. Mrs. Doe has been a Muslim her entire life. She wears the hijab, a headscarf worn by Muslim women that covers their hair and neck. Mrs. Doe has been wearing the hijab since July 2013. Mrs. Doe's Kentucky driver's license and passport depict her wearing the hijab, which covers her hair, ears, and neck.

Mrs. Doe's faith requires her to always wear a hijab when she is in mixed-gender spaces outside of her immediate family. Mrs. Doe's religious beliefs are deeply rooted in Islamic texts and teachings. Her hijab is a pillar of her religious practice and integral to her identity as a Muslim woman. Appearing in public without hijab or being photographed without wearing hijab and having that photo available to the public is a serious breach of Mrs. Doe's faith. Mrs. Doe also wears the abaya, a long-sleeved, full-length dress. She believes that in addition to covering her hair, she is required to wear loose-fitting clothing that fully covers her arms and legs. Mrs. Doe must fully cover in front of males who are not members of her immediate family. Anytime Mrs. Doe goes out in public, whether shopping or at work,

she is clothed in her abaya. Appearing in public without her abaya or without loose-fitting clothing that covers her arms and legs is a serious breach of Mrs. Doe's faith..

On April 6, 2023, at about 4:30 PM, officers from the Bowling Green Police Department including Defendant Officer Benjamin Carroll. responded to a call at Mrs. Doe's residenc., The officers questioned Mrs. Doe outside her home. Mrs. Doe was wearing an abaya and hijab. The female officer present handcuffed her and placed her in a vehicle. While in the vehicle on the way to Warren County Regional Jail, Mrs. Doe told Officer Carroll that she needed to keep her hijab on in accordance with her religious beliefs. Because she was concerned that jail clothing may conflict with her religious attire, she asked Officer Carroll about jail attire regulations. Officer Carroll did not respond. On arrival at WCRJ, Mrs. Doe went through the booking process. Defendant Deputy Jailer Harp was part of the process.

Shortly after, Mrs. Doe was subject to a strip search by Officer Smith 1. Following the strip search, Officer Smith 1 gave Mrs. Doe back her hijab as well as a uniform with short sleeves. Mrs. Doe immediately requested a long-sleeved shirt instead. At first, Officer Smith 1 refused, but Mrs. Doe explained it was a religious requirement for her to be fully covered. Finally, Officer Smith 1 relented, and Officer Smith 2 brought in a thermal long-sleeved shirt for Mrs. Doe to wear instead. Officers Smith 1 and Smith 2 explained to Mrs. Doe that it was against policy for her to be granted a long-sleeved shirt, but they would not apply the policy to her. Mrs. Doe changed into jail-issued clothing and put on her hijab.

Mrs. Doe was then escorted out of the room by Officer Smith 1 and taken into the hallway of the lobby. There she was instructed to sit on a metal bench in the jail lobby. During this time Mrs. Doe realized that her strip searched had been live streamed on a TV in the lobby. While Mrs. Doe sat on the bench in the hallway, processing the implications of this

traumatic experience, Officer Smith 1 informed Mrs. Doe that she would not be allowed to wear her hijab throughout the facility and asked her to remove it. Mrs. Doe protested and explained that wearing the hijab was both a religious requirement and her constitutional right. She continued to explain to Officer Smith 1 that the hijab was essential to her beliefs, and she could not be in public without it. Officer Smith 1 still insisted that Mrs. Doe remove her hijab. At some point in the conversation Mrs. Doe became visibly upset and began to cry. She pleaded with Officer Smith 1 and Officer Smith 2. Toward the end of the conversation, Defendant Harp intervened and told Mrs. Doe that the removal of her hijab was policy, and that no exception would be made for her.  While still seated on the bench, Mrs. Doe reluctantly removed her hijab in full view of the surrounding male officers and incarcerees present.

Still exposed without her hijab, Mrs. Doe was escorted to the jail lobby, which was still full of male and female officers and incarcerees, to have her booking photograph taken Defendant Officer Carroll was still present. As Officer Smith 1 was positioning Mrs. Doe for the booking photograph, Mrs. Doe pleaded with Officer Smith 1 to allow her to put her hijab back on.  However, Defendant Smith 1 told her that the policy prohibits her from wearing a hijab for booking photographs.  Officer Carroll, having been informed by Mrs. Doe earlier of her religious requirements, did not intervene or protect her religious rights. He stood by, in the lobby , and along with the other male officers and incarcerees, and visitors present, was able to see her take the photo.  Defendant Smith 1 took Mrs. Doe's photograph without her hijab despite Mrs. Doe's protests.

Defendants, in accordance with WCRJ's policies and practices, uploaded Mrs. Doe's hijab-less photo to the public JailTracker database. JailTracker is a specialized software solutions company that serves corrections facilities across the country. WCRJ uses a

searchable incarcerees database from JailTracker that is available to the public through their website at https://www.warrencountyjail.com. Mrs. Doe's image without her hijab is still available to law enforcement agencies, as well as any member of the public who simply searches her name in the database.

By photographing Mrs. Doe without her hijab or abaya, and uploading that photograph to a public database, Defendants have permanently memorialized the violation of Mrs. Doe's religious rights in a manner that continuously perpetuates the original transgressions. Mrs. Doe was then escorted to her cell without her hijab. Once inside, she was permitted to put her hijab on again. However, she was not given her abaya back. She remained in the jail-issued clothing until her departure. Mrs. Doe was released from the facility on April 6th, 2023, at about 10 PM EST, four hours following her arrival at WCRJ. In those four hours, she was publicly strip searched and deprived of her hijab in a mixed-gender space.

WCRJ does not have a policy that sets forth the circumstances in which detainees may wear items to cover themselves for religious purposes. The lack of written policies to protect detainees' religious freedom to wear religious coverings during booking photos and during detention are in and of themselves policies and/or customs, which permit WCRJ officers to violate religious rights with impunity.

Defendants caused the forcible removal of Mrs. Doe's hijab without her consent pursuant to a custom, practice, or official policy promulgated and implemented by WCRJ and Defendants. This custom, practice, or police was ratified, or went unaddressed by, WCRJ. WCRJ has no written policy forbidding its employees from removing detainees' religious head coverings, or describing scenarios when detainees would be permitted to wear religious headwear or other clothing. Upon information and belief, WCRJ has not trained its

officials and officers to prohibit them from conducting strip searches in public view of strange men. WCRJ officials and officers have filled this vacuum with a custom and practice of conducting strip searches in public view of strange men in violation of detainees' religious beliefs and constitutionally held rights.

Unlike the WCRJ policy, custom, or practice of forcibly removing religious head coverings for booking photographs, the United States Department of State permits individuals to maintain their religious head coverings in official passport photographs. According to the Department of State website, this accommodation should be granted to individuals who "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn in public."[1]

Similarly, the Federal Bureau of Prisons ("BOP") has enacted a policy accommodating "religious headwear" providing that "[s]carves and head-wraps (hijabs) are appropriate for female inmates."[2]

Likewise, the Kentucky Department of Corrections permits "[s]carves and head wraps to be authorized for female inmates who have identified a religious preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition." This includes the hijab in white or off-white colors to maintain uniformity.[3]

The New York Department of Corrections permits incarcerees to wear religious head coverings.[4] And the Orange County Sheriff's Department in California does not require

---

[1] https://ru.usembassy.gov/u-s-citizen-services/passports/photos
[2] *See* U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004), *available at:* http://www.bop.gov/policy/progstat/5360_009.pdf.
[3] *See* Kentucky Corrections, Policies and Procedures, Policy No. 2301 at 5 (filed Jan. 9, 2007).
[4] *See* State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015).

Muslim women in custody to remove their hijabs in front of male officers and provides temporary headscarves. This occurred following a suit by a Muslim woman detained in North County Justice Center for several hours after being forced to remove her hijab.[5]

Additionally, other correctional facilities and government agencies have recognized the sanctity of the hijab when it is worn as a religious article of clothing, which should be properly accommodated. These examples reflect a growing national consensus that there is no need to require the removal of religious head coverings while in detention or custody.

By forcibly removing Mrs. Doe's hijab and exposing her to strange men without her consent, by photographing her without her hijab without her consent, and by subjecting her to a strip search and exposing her fully nude to strange men, Defendants caused Mrs. Doe extreme mental anguish, trauma, and emotional distress. By failing to properly train, control, and supervise its officers, and by failing to implement a policy safeguarding the religious rights of detainees and arrestees, Defendants demonstrated a reckless indifference to Mrs. Doe's constitutional rights.

## Standard of Review

Federal Rule of Civil Procedure 10(a) requires that "every pleading" in federal court "must name all the parties". Under certain circumstances, however, Plaintiff may proceed anonymously. *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005) (citing *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)). Such an exception may be warranted if Plaintiff's "privacy interest substantially outweighs the presumption of open judicial proceedings." *K.R.B. v. Elizabethtown Indep. School Dist.*, No. 3:17-cv-605-GNS, 2017 WL 11483915, at *1 (W.D. Ky. Dec. 7, 2017) (citing *Porter*, 370 F.3d at 560). According to the

---

[5] http://www.ocregister.com/articles/religious-495992=county-court.html

Sixth Circuit, in balancing privacy and the presumption of openness, the Court must consider:

    (1) If Plaintiff is challenging government activity;

    (2) If the Plaintiff would be compelled, absent anonymity, to disclose information of the utmost intimacy; or

    (3) If the Plaintiff would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution.

    (4) Whether the plaintiffs are children.

*Porter*, 370 at 560 (6th Cir. 2004).

Finally, the Court will consider whether the defendants can proceed with sufficient information to present their arguments against the plaintiff's case. *Porter*, 370 F.3d at 561. As set forth below, the factors tilt heavily in favor of the Doe Plaintiff's right to proceed anonymously.

### Argument

The Doe Plaintiff's privacy rights outweigh the general rule of openness in judicial proceedings on the whole as her privacy rights revolve around the highly personal and sensitive nature of her religion and cultural traditions.

**A. Plaintiff would be compelled, absent anonymity, to disclose information of the utmost intimacy.**

Federal courts have held that religion is one of the most private and sensitive matters. *See Doe v. Pittsylvania County, Va.*, 844 F. Supp. 2d 724, 728 (W.D. Va. 2012). *See also, Engel v. Vitale*, 370 U.S. 421 (1962) ("[R]eligion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate."). In determining whether to allow a plaintiff

to proceed anonymously in an action involving a Muslim woman's sexual assault, the Eleventh Circuit determined that the "social stigma" associated with such cases was enough to warrant proceeding anonymously. *Doe v. Neverson,* 820 Fed. Appx 984, 988 (11h Cir 2020).

The Doe Plaintiff here is alleging a full strip search conducted by WCRJ, one livestreamed in the view of all those present in the station lobby. As in *Neverson*, this is not merely an issue of "personal embarrassment." *Id.* Being a devoted Muslim woman in her community, the very nature of such accusations would bring sufficient injury to herself and shame to her family under their cultural/religious traditions.. She would be compelled to disclose a deeply personal matter to her detriment. Future victims would be discouraged from coming forward.

Here, the Doe Plaintiff is also concerned that her photograph without a hijab will unnecessarily circulate, together with her name. With her name and the context of these allegations, it would be frighteningly easy for any individual to find her booking photograph online. The photo captures a moment of deep humiliation and shame for the Doe Plaintiff. Her faith requires her to always wear a hijab when she is in mixed-gender spaces outside of her immediate family. Appearing in public without hijab or being photographed without wearing hijab and having that photo available to the public is a serious breach of Plaintiff Doe's faith, and a deeply humiliating and defiling experience in conflict with her sincerely held religious beliefs. For the photograph to be seen by more members of the public, in direct violation of her religious beliefs, would compound  create great social and mental harm to the Doe Plaintiff.

Once again, this is not a matter of mere "personal embarrassment," but deep humiliation among her community, and a continuation of the harm Defendants have already caused her. This may also result in harassment towards Plaintiff, as the photograph could easily be used against her. To avert thisa, her name should be protected under seal.

**B.  Defendant will not be disadvantaged by the Doe Plaintiff's anonymity.**

Defendants bear no risk of unfairness as a result of allowing Doe Plaintiff to proceed anonymously. Doe Plaintiff does not seek to withhold her identity from Defendants, only from public record. On the Court's issuance of the protective order sought by this motion, Plaintiff will provide Defendants with her full name and unredacted versions of declaration in support of this motion and the verified complaint.

## Conclusion

Because the Doe Plaintiff faces extreme risk of social stigma and perpetuation of existing harms caused by Defendant.

WHEREFORE, for the reasons discussed above, Plaintiff respectfully move this Honorable Court GRANT her Motion for a Protective Order and to Keep the Name of Jane Doe Plaintiff Under Seal.

Respectfully submitted,

**CAIR NATIONAL LEGAL DEFENSE FUND**

/s/Lena F. Masri
Lena F. Masri (VA 93291)*
lfmasri@cair.com
Kimberly Noe-Lehenbauer (OK 34744)*
knoelehenbauer@cair.com
Zanah Ghalawanji (MI P83116)*
zghalawanji@cair.com

453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

*Co- Counsel for Plaintiff*

/s/Roula Allouch
Roula Allouch (Kentucky Bar No. 91594)
rallouch@brickergraydon.com
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 629-2805

*Co- Counsel for Plaintiff*

*Pro hac vice applications are forthcoming.